**In re CRITICAL CARE SUPPORT SERVICES, INC., Debtor.**

**Bankruptcy No. 889–92403–478.**

United States Bankruptcy Court, E.D. New York.

April 8, 1992.

Peter R. Newman, P.C., Sp. Counsel, Hauppauge, N.Y., Macco, Hackeling, Stern & Christensen, Huntington, N.Y., for debtor.

U.S. Dept. of Justice, Philip Karter, Trial Atty., Tax Div., Washington, D.C., for the I.R.S.

## DECISION ON MOTION TO MODIFY STIPULATION AGREEMENT

DOROTHY EISENBERG, Bankruptcy Judge.

The Internal Revenue Services ("IRS") filed a timely amended proof of claim in the sum of $7,011,990.39 in this case. The Debtor, Critical Care Support Services, Inc. ("Debtor"), moved to have this claim number "6" expunged. This highly contested motion was heard and determined as if it were an adversary proceeding conducted pursuant to the adversarial rules of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure, including taking testimony from various parties.

The primary underlying issue in controversy is whether, for purposes of federal withholding taxes and insurance contribution (FICA) taxes, the Debtor was staffed by employees or independent contractors during the relevant period, 1987 and 1988.

After several lengthy hearings held, the Court denies Debtor's motion to expunge the claim and makes the following findings of fact.

## FINDINGS OF FACT

This Debtor is a New York corporation with a principal place of business at 123–40 83rd Avenue, Kew Gardens, New York.

The Debtor commenced doing business under its present name on or about May, 1987.

Prior to this date, the very same business was operated under the name Criticare Support Services, Inc. ("Criticare").

The Debtor is the successor in interest to Criticare, having utilized its same back account, furniture, fixtures and equipment and having collected and utilized its accounts receivables subsequent to its ceasing to operate as if it were the same business.

Both the Debtor and Criticare operated the same business, namely supplying critical care nurses to hospitals in the New York metropolitan area.

Debtor located hospitals who needed supplemental nurses. A hospital in need of nurses would request the Debtor to provide them with qualified nurses who have the specialized training required for a particular position.

The Debtor screens the nurses prior to its sending any nurse to a hospital, so that the Debtor is assured the nurse possesses the requisite license, skill, and malpractice insurance. If the Debtor found that the nurse did not have the appropriate license, skill, and malpractice insurance, the Debtor would not place this nurse at a requesting hospital.

The nurses are told what shift they are to fill, the hours, and where they are to report. The nurses are paid for their shift by the Debtor. The Debtor, in turn, bills the hospital for the nursing services it provides to the hospital, which amount is greater than the amount the Debtor pays to the individual nurse.

The hospitals do not pay the nurses directly, nor do they reassign the nurse to work other than the shift and duties that were requested. The nurses have no financial investment in the Debtor or any other business, and are paid for the hours they work, regardless of whether the hospital pays the Debtor's bill to Debtor. Thus, the nurses bear no risk of profit or loss.

If a hospital is not satisfied with a nurse's performance, it notifies the Debtor that it does not wish this particular nurse to be returned to it. Depending upon the nature of the complaint, the Debtor determines whether it will send that nurse on assignments to other hospitals, or not use the nurse at all. The Debtor does not supervise the nurses in their daily performance once the nurses are at the hospital.

The nurses are assigned to provide services at the hospital exclusively through the Debtor. The nurses can not hire any aid or replacement for the job to be performed.

The Debtor is in sufficient control of the nurses to be deemed an employer. Due to the very nature of the professional arrangement of nurses and hospitals, the Debtor could not have provided the daily supervision once the nurse was on the hospital floor, regardless of whether the nurse was deemed an employee or an independent contractor.

The Debtor's predecessor, Criticare, treated its nurses as employees and provided them with W–2 forms for the years it actually operated, i.e. up to approximately April of 1987. The change in name and tax treatment of the nurses occurred in May, 1987. The Debtor then reclassified the same nurses and newly added ones from employees to independent contractors.

The prior corporate entity had two shareholders—one of which was Leonard Haber who owned 80% of the shares—the other was his uncle who owned 20% of the shares, but who had no involvement in the Debtor's operation. In fact, Mr. Haber's uncle never received any financial information regarding the Debtor's operations and had commenced litigation to obtain the rights to which he believed he was entitled to and were being denied to him by Mr. Haber. The Debtor was formed using the very same assets and nurses. The only difference is that Leonard Haber is the 100% owner of the Debtor.

Although Mr. Haber claims the change of name was to separate the Debtor entity from its predecessor because of a dispute with the minority shareholder, this Court finds that the change in name or ownership does not alter its operations and that the Debtor is in fact the successor in interest to Criticare.

Debtor made a unilateral determination to treat the very same nurses and/or others that may have come into its service, as independent contractors for the tax years 1987 and 1988, without sending Forms 1099 to the nurses during said period. Nor did Debtor timely file the appropriate information with the IRS regarding the nurses' income.

For the tax years 1989 and thereafter, Debtor reassigned the nurses the title of "employee" and reported taxes accordingly. Nothing other than the method of treating the nurses as independent contractors differed from the predecessor, Criticare's operation of the business.

## DISCUSSION

Although Debtor raises the issue of burden of proof as to the *prima facie* allowance of a filed proof of claim, this is not in issue here since the creditor, the IRS, has met its burden of establishing its claim by the evidence presented.

The Debtor seeks to rely on section 530 of the Internal Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2885, as amended by section 269(c) of the Tax Equity and Fiscal Responsibility Act of 1982, 1982–2 C.B. 462, 536. Rev.Rul. 87–41 explains the application of section 530 as follows:

> ... for purposes of the employment taxes under subtitle C of the Code, that if a taxpayer did not treat an individual as an employee for any period, then the individual shall be deemed not to be an employee, unless the taxpayer had no reasonable basis for not treating the individual as an employee. For any period after December 31, 1978, this relief applies *only if both* of the following consistency rules are satisfied: (1) all federal tax returns (including information returns) required to be filed by the taxpayer with respect to the individual for the period are filed on a basis consistent with the taxpayer's treatment of the individual as not being an employee ('reporting consistency rule'), *and* (2) the taxpayer (and any predecessor) has not treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for periods beginning after December 31, 1977 ('substantive consistency rule'). (Emphasis added).

Rev.Proc. 85–18 which amplifies the provisions of section 530, states in pertinent part:

> A new section 3.02 titled 'Filing of Returns' has been added stating that relief under section 530(a)(1) of the Act will not be granted if a Form 1099 has not been timely filed for each worker for any period after December 31, 1978.

The determination of whether an individual who is treated as an employee, holds a position substantially similar to that held by an individual whom the taxpayer would otherwise be permitted to treat as other than an employee for employment tax purposes under section 530(a) of the 1978 Act, requires an examination of all the facts and circumstances, including particularly the activities and functions performed by the individuals. Rev.Rul. 87–41.

Courts are often asked to construe the meaning of "employee" where the statute containing the term does not helpfully define it. In the past when Congress used the term employee without defining it, courts have concluded that Congress intended to describe the conventional master/servant relationship as understood by the common law agency doctrine. *See, e.g., Kelley v. Southern Pacific Co.,* 419 U.S. 318, 322–323, 95 S.Ct. 472, 475, 42 L.Ed.2d 498 (1974). A test for determining who qualifies as an employee has been summarized in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751–752, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989). Additionally, the Restatement Second of Agency at 220(2) (1958) lists non-exhaustive criteria for identifying the master/servant relationships.

■ The issue of whether an employer-employee relationship exists for purposes of employment taxes has generally been held to be one of fact. *Lifetime Siding, Inc. v. United States,* 359 F.2d 657, 662 (2d Cir.1966); *American Consulting Corp. v. United States,* 454 F.2d 473, 477 (3d Cir. 1971); *Service Trucking Co. v. United States,* 347 F.2d 671, 672 (4th Cir.1965); *Hoosier Home Imp. Co. v. United States,* 350 F.2d 640, 643 (7th Cir.1965); *Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 578 (8th Cir.1973); *McGuire v. United States,* 349 F.2d 644, 646 (9th Cir.1965).

The common law does not provide a simple uniform and easily applicable test through which the existence of either employee or independent contractor status can be detected. *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). In the absence of a rule of thumb, courts have developed and relied upon a number of factors to reach a finding of employee or independent contractor status.

■ Under the common law test for determining who qualifies as an employee, the following criteria are to be considered: the hiring party's right to control the manner and means by which the work is to be performed, the skill required, the source of the tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistance, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provisions of employee benefits, and the tax treatment of the hired party. *Reid,* 490 U.S. at 751–752, 109 S.Ct. at 2178–79.

It is clear that all of the incidents of the relationship must be assessed and weighed with no one factor being decisive in determining whether a particular relationship results in an employee/employer relationship versus an independent contractor. *N.R.L.B. v. United Ins. Co. of America,* 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968).

■ In this case, considering all of the factors, this Court finds that the nurses employed by the Debtor were its employees and not independent contractors. The Debtor paid the wages directly to the nurses. The Debtor cannot be considered an employment agency, which procures employees for employers for a fee, for it does not merely extract a fee for its service from either the hospital or the employee, rather, it pays the nurses' wages for actual work they perform on a one shift basis. Notwithstanding that one may be employed at occasional or uncertain or irregular times, such is "employment" nonetheless.

The Debtor's regular business was in providing qualified nurses to hospitals for critical care services. This was the Debtor's only business. The nurses' services were necessary and incident to the business conducted by the Debtor. Debtor's counsel highlights the fact that once the nurses

arrive at the hospital, Debtor does not actually control the nurses, rather, the hospital nursing director would take control over the nurses. Although control of the nurses is one of the factors that should be considered, a difference exists between actual control and the right to control.

As a practical matter, it is often difficult to demonstrate the existence of a right to control without evidence of an actual exercise of that right. However, since we are dealing with professional critical care nurses, who are carefully screened by the Debtor as to their qualifications, there is no need for Debtor to actually control their every movement once the nurses arrive at the hospital. The Debtor does, however, retain the right to control, which is reflected in the Debtor's right not to send a particular nurse to a particular hospital, or to assign that nurse to several different duties at the same hospital, or to withhold assignments for any period of time. The Debtor has the right to assign the nurse to a particular duty specifying the time and place of such work. The Debtor pays the nurse directly regardless of whether it receives payment from the hospital. The nurses have no right to obtain substitutes or to hire anyone else in their stead. If a nurse is unable to fulfill her duties, the Debtor is the one who may provide another qualified nurse.

The Court's finding that the nurses are employees, is sufficient to uphold the claim filed by the IRS. In this particular case, the facts prevent Debtor from claiming rights under § 530 of the Revenue Act of 1978. The Debtor's reliance upon section 530(a) is misplaced for several reasons: first, because Debtor, through its predecessor, treated its nurses as employees for several years and is its successor for tax purposes; second, because Debtor had no reasonable basis for not treating the nurses as employees under the common law definition of employee; and third, Debtor did not timely comply with the filing of appropriate tax forms as required by section 530(a) of the Internal Revenue Code.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(1) and 11 U.S.C. § 505(a)(1). Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding.

2. The IRS has produced evidence beyond its *prima facie* burden of proof as to the validity of its timely filed claim in this case.

3. The debtor has not introduced evidence sufficient to rebut the validity of this claim.

4. The Debtor is the successor in interest of Criticare for tax purposes.

5. The Debtor did not file appropriate tax forms pursuant to its allegations that the nurses were independent contractors, and failed to comply with section 530(a) of the 1978 Act of the Internal Revenue Code.

6. Considering all the pertinent facts in this case, the Court finds the nurses to be employees of the Debtor.

For the foregoing reasons, the IRS' claim for taxes must be allowed and the Debtor's request to expunge the claim is denied.