**In re Arden R. ARNDT, Debtor.**

**Arden R. ARNDT, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 91–0880–BKC–3P3. Adv. No. 91–128.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 28, 1993.

William F. Lawless, Altamonte Springs, FL, for plaintiff.

David N. Geier, Washington, DC, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon debtor's objection to claim filed by the United States Internal Revenue Service ("IRS")

and upon debtor/plaintiff's declaratory judgment proceeding seeking a determination whether the classification of plaintiff's workers as employees rather than independent contractors is correct. Plaintiff and defendant agreed to consolidate the objection to claim and the adversary proceeding. The Court held hearings on both on November 3, 1992, and April 8, 1993, and upon the evidence presented, the Court enters the following findings of fact and conclusions of law:

## Findings of Fact

Plaintiff runs a grading and sod laying business called Sod King. Plaintiff had the business incorporated in 1987. Sod King contracted with general contractors, developers and individual homeowners to landscape and lay sod.

Plaintiff had sixteen workers during 1985 and 1986. Some of the sixteen had worked for plaintiff for two years or more. Both plaintiff's wife and his sister, Marsha Reynolds, worked for Sod King as secretary/bookkeeper during 1986. Sod King's address is the Arndt's home, however Reynolds ran the office from her home. Plaintiff's other workers are divided into four groups: graders, sodlayers, landscapers and truck drivers. Plaintiff used only one landscaper.

Plaintiff supplied trucks for business use. One of the trucks received ninety percent (90%) of its use for business purposes and the other truck fifty percent (50%).

Plaintiff had one truck driver, Willie Huff, who drove the Sod King truck. The truck driver was required to go to sod farms to pick up sod and then deliver it to Sod King's job sites. The truck driver communicated with the bookkeeper to coordinate where and when to deliver the sod. Plaintiff utilized other truck drivers who supplied their own trucks when he needed more than one truck to transport sod.

Plaintiff also supplied a forklift, a trailer and, for workers who did not have their own, he supplied tools. The tools consisted of rakes, machetes, and shovels. Workers did not receive any training or instruction on how to lay sod. One worker testified that all that was required in laying sod was remembering to put the "green side up."

Plaintiff paid the sodlayers by the pallet and the truck drivers were paid by the load. The landscaper and the graders were paid by the job. Plaintiff did not pay the workers on a regular schedule. Rather plaintiff paid the workers on a frequent and non-uniform basis. Plaintiff did not pay expenses for the workers but did pay to maintain the truck.

Plaintiff had the right to terminate workers but had never done so. Workers could hire others and were responsible for paying the extra workers. Plaintiff's approval was not necessary for hiring extra workers. Workers worked in teams to achieve the greatest productivity and, if someone did not do their share of the work, they would not be asked to return the following day. Workers sometimes did more than one task to expedite the job.

The workers could terminate their relationship with plaintiff at any time without obligation to finish the job.

The landscaper worked when it was convenient for him. The truck driver often went to pick up the sod at 3:00 a.m. to insure arrival at the job site early in the morning.

Plaintiff provided transportation to the job site for individuals without transportation. The individual workers could decide whether they wanted to work that day and, if they did and they needed a ride, plaintiff would provide transportation. There was no set time to be at the job site. The schedule was dependent on when the sod was received from the truck driver and when the grading was complete. Both of these tasks had to occur before the sod could be put down.

Plaintiff would contact a worker and tell him where the job site was located and when the sod would be laid. Workers were not restricted in working for other sod laying operations and many of the workers did work for more than one company. The graders congregated at a local grocery

store because anyone looking for a grader would come to that location.

Workers did not receive any employee benefits such as health insurance, paid vacation, or pension benefits. However four sodlayers did receive Christmas bonuses of $25.00 to $55.00 in 1986.

Plaintiff classified and paid his workers as independent contractors during 1985 and 1986. Plaintiff provided each worker with a 1099 form and filed its form 1096 for both years. All the workers signed contracts stating that they understood that they were independent contractors and that they were responsible for paying their own taxes.

Plaintiff testified that other sod laying businesses classified their workers as independent contractors. The testimony of the sodlayers was that they were treated as independent contractors at the other businesses for which they worked. The IRS produced one witness who testified that her company classified their workers as employees, but she did not have knowledge of other companies' policies.

In 1988 the Internal Revenue Service audited plaintiff and determined that plaintiff had misclassified his workers. The IRS then assessed $56,807.49 in unpaid Federal Unemployment Tax Act (FUTA) taxes and Federal Insurance Contributions Act (FICA) taxes due from 1985 and 1986 on the misclassified workers. Plaintiff reclassified his workers after the audit.

Based on the audit results, debtor filed claim 1 in the name of the IRS and then objected to the claim alleging that his workers are independent contractors. The IRS filed claim 2 on June 12, 1991, for $56,807.49. The claim is secured by a tax lien and supersedes claim 1 filed by debtor. F.R.B.P. 3004.

Four of Sod King's workers paid the taxes due from them as independent contractors.

### Conclusions of Law

 The Code gives the Bankruptcy Court authority to "determine the amount or legality of any tax." 11 U.S.C. § 505(a)(1). Thus the Court may determine the amount of a tax claim just as it would any other claim. The Code addresses the allowance of claims in § 502 which states in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, ... objects.

(b) ... if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim as of the date of filing the petition, and shall allow such claim ... in such amount,....

A claim is allowed as filed unless a party objects. *In re St. Augustine Gun Works, Inc.*, 75 B.R. 495 (Bankr.M.D.Fla.1987); Federal Rule of Bankruptcy Procedure 3001(f) proscribes the evidentiary effect of a proof of claim. The rule states in pertinent part:

(f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Thus a claim is prima facie evidence of validity and amount. *In re St. Augustine Gun Works*, 75 B.R. 495 (Bankr.M.D.Fla. 1987). In bankruptcy in an objection to claim, the debtor has the initial burden of rebutting the presumption of validity given the proof of claim. *Id.* If the debtor carries its burden, then the claimant has the ultimate burden of proof. *Id.*

 In tax cases generally, the taxpayer has the burden of overcoming the presumptive validity of IRS determinations and must show that they are not liable.[1] *Helvering v. Commissioner*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Whitney v.*

---

**1.** The IRS relies on *Terrell v. U.S.,* for the proposition that the Eleventh Circuit places the burden on the taxpayer to prove that the IRS is incorrect in their claim. 835 F.2d 1439 (11th Cir.1987); *Terrell* does not control this case be-

cause it did not deal with an objection to claim, rather the question was whether the debtor was a responsibly connected person and liable for failure to turnover funds withheld.

*Dresser,* 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); *Resyn Corp. v. U.S.,* 851 F.2d 660 (3rd Cir.1988); *In the Matter of Uneco,* 532 F.2d 1204 (8th Cir.1976).

■ Thus the question is, what effect does bankruptcy have on the usual allocation of the burden of proof in deciding a tax issue? The courts have split on this question. *In re Premo,* 116 B.R. 515 (Bankr.E.D.Mich.1990). This Court finds that there is no authority in the Code to treat the IRS differently than any other claimant, and thus will not alter the usual allocation of the burden of proof in an objection to claim case. *Accord, In the Matter of Fidelity Holding Company, Ltd.,* 837 F.2d 696 (5th Cir.1988); *In re Watson,* 456 F.Supp. 432 (S.D.Ga.1978); *In re Premo,* 116 B.R. 515 (Bankr.E.D.Mich. 1990); *In re Dakota Ind., Inc.,* 131 B.R. 437 (Bankr.D.S.D.1991). Consequently, the proof of claim filed by the IRS in the amount of $56,807.49 is prima facie evidence of the validity and amount of the debt owed to the IRS and plaintiff must present evidence sufficient to overcome this presumption.

Plaintiff filed a written objection to claim 2 of the IRS on May 29, 1991. Plaintiff argues that it does not owe any taxes because its workers are independent contractors who are responsible for paying their own taxes and that plaintiff does not have an obligation to pay or withhold taxes for them. Plaintiff filed the required informational returns. This is sufficient to rebut the prima facie validity afforded a proof of claim, and the IRS now has the burden of showing by a preponderance of the evidence that the claim is valid in the amount of $56,807.49.

### Classification

■ Employee is defined in 26 U.S.C. § 3121(d)(2), as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Generally, workers are classified as employees or independent contractors based on the amount of control their employer may exercise over them. 26 C.F.R. 31.-

3121(d)–1(2); *Breaux and Daigle, Inc. v. U.S.,* 900 F.2d 49 (5th Cir.1990) citing 26 C.F.R. 31.3121(d)–1(2). The treasury regulation states in part:

Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done.

26 C.F.R. § 31.3121(d)–1(c)(2).

■ The courts have utilized factors to aid in analyzing the status of individuals as employees or independent contractors. Factors that the courts have used are:

1. Instruction
2. Training
3. Integration
4. Services Rendered Personally
5. Hiring, Supervising, and Paying Assistants
6. Continuing Relationship
7. Set Hours of Work
8. Full Time Required
9. Doing Work on Employer's Premises
10. Order or Sequence of Work
11. Oral or Written Reports
12. Payment by Hour, Week, Month
13. Payment of Business and/or Travel Expenses
14. Furnishing of Tools and Materials
15. Significant Investment
16. Realization of Profit or Loss
17. Working for More that One Firm
18. Making Service Available to General Public
19. Right to Discharge
20. Right to Terminate
21. Intention of the Parties
22. Skill Required
23. Providing Workers' Compensation or other Insurance
24. Employee–Type Benefits

25. Industry Practice or Custom

26. Written Signed Independent Contractor Agreements

*U.S. v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *In re Imholte*, 118 B.R. 103 (Bankr.D.Alaska 1990); *In re Rasbury*, 130 B.R. 990 (Bankr.N.D.Ala.1991); *In re Critical Care Support Services, Inc.*, 138 B.R. 378 (Bankr.E.D.N.Y.1992); *In re Compass Marine Corp.*, 146 B.R. 138 (Bankr.E.D.Pa.1992); Rev.Rul. 87–41. No single factor is determinative, rather the totality of the circumstances controls. *U.S. v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *In re Montoya*, 77 B.R. 926 (Bankr.M.D.Fla.1987).

Plaintiff urges the Court to follow *In re Rasbury* as the most analogous case on this issue. 130 B.R. 990 (Bankr.N.D.Ala. 1991). In *Rasbury*, the Court found that loggers were highly skilled workers who provided some tools for their work, hired and fired their own co-workers, decided when to work, did not receive employee benefits and signed written contracts indicating that they were independent contractors and that the employer would not withhold taxes from their pay based on production. Debtor presented expert testimony that treating loggers as independent contractors was common practice in the logging industry in West Alabama. The *Rasbury* court analyzed twenty-four factors in determining whether the loggers were employees or independent contractors and concluded that the loggers were independent contractors.

In contrast, defendant argues that the graders, sodlayers and landscaper are more analogous to the employee crab meat pickers in *Breaux and Daigle, Inc. v. United States*. In *Breaux and Daigle*, the Fifth Circuit found that the crab meat pickers were entitled to work when they chose, were free to come and go as they pleased and could work for other companies and supplied their own inexpensive equipment. The Fifth Circuit found that the crab meat pickers were employees because the degree of control exercised was that which was commensurate with the level of skill involved in the job and that the control exer-

cised by the employer was greater than that which would be exercised if the workers were independent contractors.

These cases are instructive, but each case must be determined on its own facts. *Illinois Tri–Seal Products, Inc. v. U.S.*, 173 Ct.Cl. 499, 353 F.2d 216 (1965). The Court concludes, after assessing the common law factors, that the graders, sodlayers and landscaper were correctly classified by Sod King as independent contractors.

## A. Sodlayers, Graders, and Landscaper

■ Plaintiff did not control when or how the workers worked, workers came and went as they pleased, worked for others firms and did the work by whatever method they found to be the most productive. Workers were free to, and did, hire assistants that they were responsible for paying and, if an individual was not sufficiently productive, the other workers would discharge that individual by failing to ask him to return to the job site. The workers thought that plaintiff could fire an individual worker, but plaintiff had never done so.

Plaintiff paid the workers on a production basis not an hourly wage. Plaintiff paid the graders and the landscaper by the job and the sodlayers by the pallet. The sodlayers, graders, and landscaper did not receive employee benefits, however, four sodlayers did receive "Christmas Bonus" checks. All the workers that testified indicated that they considered themselves independent contractors and were treated as such at the other firms where they worked. Each of the workers signed a statement indicating their independent contractor status and their duty to pay their own taxes.

The Court agrees that the Sod King workers' situation is similar to that of the loggers in *Rasbury*. In both cases plaintiff provided most of the tools for the sodlayers and graders, the workers were paid on a production basis, and the work was done away from the employer's premises. However, unlike the loggers in *Rasbury* the Sod King workers were not highly skilled and were not exposed to the risk of

economic gain or loss.[2] In contrast to both the loggers and Sod King workers, the unskilled workers in *Breaux and Daigle* worked on the company premises, were subject to being sent home for improper dress or conduct, and their work was subject to inspection and approval of company employees. Consequently, in considering the totality of the factors, the Court finds that plaintiff had minimal control over its workers and properly classified them as independent contractors.

### B. Secretary/Bookkeeper and Truck Driver

■ Plaintiff exercised greater control over these two positions.[3] The secretary and truck driver were required to coordinate the delivery of the sod at the job site thus, in contrast to the other workers, plaintiff also controlled when the truck driver worked. In addition, plaintiff furnished a truck for one driver and paid for the fuel. Because the driver used plaintiff's truck he was not able to work for other companies as did the other workers. There was no evidence that the truck driver ever hired assistants. Willie Huff testified that he occasionally had his brother-in-law pick up the sod, but he did not hire assistants as did the other workers.

The secretary/bookkeeper also worked exclusively for plaintiff and in the Sod King office. These additional factors indicating greater control are of sufficient weight to distinguish these two positions from the graders, sodlayers, and landscaper. Accordingly, these individuals are properly classified as employees.

### § 530 Safe Harbor (26 U.S.C. § 3401)

■ Plaintiff argues that even if he misclassified his workers he is not liable to the IRS for failure to pay taxes for the misclassification because he fits within § 530. Section 530 was created by Congress in 1978 to alleviate what was perceived as overly zealous pursuit and assessment against employers who had, in good faith, misclassified their employees as independent contractors. *In re Rasbury*, 130 B.R. 990 (Bankr.N.D.Ala.1991); *In re Compass Marine Corporation*, 146 B.R. 138 (Bankr.E.D.Pa.1992); Section 530 states in relevant part:

CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF EMPLOYMENT TAXES

(a) TERMINATION OF CERTAIN EMPLOYMENT TAX LIABILITY.

(1) IN GENERAL.—if—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) STATUTORY STANDARDS FOR PROVIDING ONE METHOD OF SATISFYING THE REQUIREMENTS OF PARAGRAPH (1).—

For the purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in

---

**2.** This Court does not agree with the *Rasbury* court that paying workers on the basis of production subjects them to the risk of economic gain or loss. Rather this Court finds that the type of economic risk contemplated by that indicator requires investment in the business and a stake in the overall profitability of the company. *See eg, U.S. v. Silk*, 331 U.S. 704, 717, 718, 67 S.Ct. 1463, 1470, 1471, 91 L.Ed. 1757 (1947).

**3.** Both Anna Arndt and Marsha Reynolds worked as secretaries for Sod King, and plaintiff employed nine truck drivers over the course of 1985 and 1986.

reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advise with respect to the taxpayer, or a letter ruling to the taxpayer.

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long standing recognized practice of a significant segment of the industry in which such individual was engaged.

26 U.S.C. § 3401 Note (1992).

Thus, to qualify for § 530 treatment, plaintiff has the burden of proving he has fulfilled three requirements. He must have filed all required tax returns on the individuals workers, not treated any individual in a substantially similar position as an employee and had a reasonable basis for classifying the Sod King workers as independent contractors.

Plaintiff filed 1099 informational forms on all workers and treated all individuals working for Sod King as independent contractors. Plaintiff reclassified the workers after the IRS determined he had misclassified them. Plaintiff has complied with the two prerequisites for avoiding assessment, but must still show that he had a reasonable basis for classifying Sod King's workers as independent contractors.

The statute provides three non-exclusive methods for showing a reasonable basis for classification. *General Investment Corp. v. U.S.*, 823 F.2d 337 (9th Cir.1987); *In re Rasbury*, 130 B.R. 990 (Bankr.N.D.Ala. 1991). Plaintiff relied on the advice of his accountant in classifying his workers, however, this is not the type of technical advice contemplated by the statute. *In re Compass Marine Corp.*, 146 B.R. 138 (Bankr. E.D.Pa.1992). Plaintiff also relied upon what he believed was industry practice. The testimony of the sodlayers corroborated plaintiff's testimony that other landscap-

ing companies classified their workers as independent contractors. However, the Court finds that the evidence presented on the industry practice was inconclusive, because one witness testified that her company treated its workers as employees and thus no definitive picture of the industry was presented.

Other courts that have addressed the "reasonable basis" question have held that the best evidence of a reasonable basis is the determination whether the individuals are independent contractors or employees. *Id.* at 155; *In re Critical Care Support Services, Inc.*, 138 B.R. 378 (Bankr. E.D.N.Y.1992). In this case, plaintiff correctly classified all but two positions. The misclassification of these positions does not defeat plaintiff's chance of receiving relief via § 530. If relief is only available where the employer has made a correct classification, then the statute serves no purpose and it is axiomatic that remedial statutes are to be liberally construed. *Lambert*, 894 F.2d 154 (5th Cir.1990) (incorrect classification does not defeat ability to avoid assessment); *Rasbury*, 130 B.R. 990; *In re Compass Marine Corp.*, 146 B.R. 138. Thus a good faith basis is all that is required to immunize an employer's mistake. *General Investment Corp. v. U.S.*, 823 F.2d 337 (9th Cir.1987).

Accordingly, because plaintiff classified all his workers as independent contractors, and the majority of them were properly classified, relied on his accountant's advice, and filed all required informational returns, the Court concludes that plaintiff had a reasonable basis for classifying his workers as independent contractors. Consequently, plaintiff fits within § 530 and is entitled to avoid the assessment for misclassifying the secretary/bookkeeper and truck driver positions.

### Conclusion

Once plaintiff has rebutted the prima facie validity afforded a proof of claim, the IRS, as claimant, has the ultimate burden of proving the validity and amount of its claim in bankruptcy. Plaintiff correctly classified the graders, sodlayers, and land-

scaper as independent contractors because he exercised minimal control over the accomplishment of their work. Plaintiff incorrectly classified the secretary/bookkeeper and the truck driver positions. These individuals were correctly classified as employees by the IRS audit.

Although plaintiff misclassified these workers, the IRS claim is disallowed in its entirety because plaintiff qualifies for treatment under § 530 of 26 U.S.C. § 3401 which allows avoidance of the assessment owed because of misclassification.

The Court will enter a separate order and judgment consistent with these findings of fact and conclusions of law.