**In re PROFESSIONAL SECURITY SERVICES, INC., Debtor.**

**Bankruptcy No. 92–5776–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 4, 1993.

Jay D. Passer, Tampa, FL, for debtor.

Mary Apostolakos Hervey, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, DC, for I.R.S.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a challenge of the administrative tax claim filed by the United States of America through its agency, the Internal Revenue Service (IRS). The administrative claim is based on FICA and FUTA obligations accrued and unpaid post-petition in the amount of $191,579.06, allegedly the liability of Professional Security Services, Inc. (Debtor), the Debtor in the above-captioned Chapter 11 case.

The Objection to the allowance of the claim is presented for this Court's consideration by a Motion for Summary Judgment filed by the Debtor. The Debtor contends that there are no genuine issues of material fact and the Debtor is entitled to an order disallowing the administrative claim as a matter of law. The IRS filed a timely Response and also filed its own Motion for Summary Judgment, contending that there are no genuine issues of material fact and that the liability vel non of the Debtor for the unpaid taxes which accrued post-petition could be resolved in favor of the IRS as a matter of law. The following facts as they appear from the record are without dispute and can be summarized as follows:

At the time relevant, the Debtor, a closely-held Florida corporation located in Auburndale, Florida, was engaged in the business of providing unarmed security guards to commercial and industrial businesses. The business began operating in January, 1992. Jeffrey Rogers is its sole stockholder and principal officer. In addition to Rogers, the Debtor also employs Roy Glen Rogers, the father of Jeffrey Rogers, who acts as general manager and custodian of the records of the Debtor.

The Debtor provides security guards to condominiums and to one major client on an "as needed basis" at eight different locations. In rendering its services, the Debtor uses between 85 and 112 security guards, 90% of which are employed by the Debtor on a full-time basis.

Prior to the commencement of this case, the Debtor furnished newly hired guards with an employment package containing rules and regulations governing appearance of the guards. The Debtor conducted polygraph and drug tests when necessary. The guards could be terminated by the Debtor at will, and were not permitted to work for anyone else as long as they worked for the Debtor. The Debtor directed work assignments and schedules. A supervisor who is a leased employee conducted the on-site training, and the guards were inspected by the Debtor on the job sites. All personnel files of the guards were maintained and kept by the Debtor.

The Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code on April 28, 1992, and a month after the commencement of the case, the Debtor entered into an agreement (Agreement) with Payroll Transfers, Inc. (PTI). Under the Agreement, PTI would "lease" security guards to the Debtor and receive 4% of the gross payroll for its services. Prior to contracting with PTI, the same guards now leased were the employees of the Debtor. The involvement of PTI in the employment process is limited, consisting only of furnishing the hired guards with an employment package which includes health care information and W–2 forms.

The Agreement provides that it is the responsibility of PTI to prepare the payroll, file the unemployment tax returns, and pay all employment taxes. Prior to this arrangement, the Debtor filed all of the corporate returns and paid the employment taxes. The Agreement is terminable upon notice and the arrangement was, in fact, suspended for a three-month period, during which time the Debtor prepared the payroll for the guards, filed the returns, and paid the payroll taxes for the guards leased by the Debtor from PTI.

The guards are required to maintain logs of the activities and events which occur during their respective shifts and the log is reviewed by the Debtor. Each week, the Debtor provides PTI with a schedule listing the number of hours worked by the guards, and based on that information, PTI prepares the payroll checks. Once the payroll checks are prepared, the Debtor pays PTI with a check equivalent to the guards' salaries, FICA, FUTA, Medicaid, Medicare, workers' compensation, and a fee equivalent to 4% of the gross payroll.

On March 4, 1993, the IRS filed a claim for administrative expense seeking $191,579.06 in accrued and unpaid post-petition FICA and FUTA obligations of the Debtor. This claim is broken down into FICA obligations totalling $188,053.69, and the FUTA obligations totalling, $3,525.37. Because the Debtor failed to file employment tax returns for the quarters ending September 30, 1992 and December 31, 1992, a portion of the claim has been estimated and is unliquidated.

On March 29, 1993, the Debtor filed an Objection to the allowance of the claim. In the Objection, the Debtor contends that since, under the Agreement, PTI is obligated to pay the guards, PTI is liable for payment of the employment taxes. In its Response, the IRS contends that PTI's function is purely ministerial, and therefore, the Debtor, as the employer, remains liable for payment of the employment taxes. In addition, the IRS also contends that the Debtor is liable under § 6672 of the Internal Revenue Code as a responsible person. Both parties filed Motions for Summary Judgment asserting no material dispute of fact, and an entitlement to a judgment in its favor as a matter of law, the matters currently before the Court for consideration.

██ The Internal Revenue Code requires employers to deduct withholding taxes and pay FICA and FUTA taxes on employees' wages. 26 U.S.C. § 3402, § 3102, and § 3301. The duty to pay employment taxes is, of course, imposed upon the employer. Section 3401(d) of the Internal Revenue Code defines "employer" as a "person for whom an individual performs or performed any service, of whatever nature, as the employee of such person," except where the person for whom the individual performs or performed the services does not control the payment of the wages for such services. In that case, the employer is the person with control over the payment of wages.

■ The Debtor contends that PTI has control over the payment and therefore the Debtor is not the employer. In support of this position, the Debtor relies upon *In re Critical Care Support Services, Inc.,* 138 B.R. 378 (Bankr.E.D.N.Y.1992), in which the court allowed an IRS claim for withholding taxes and insurance contribution against a company that leased nurses to hospitals. The court held that the nurses were employees, not independent contractors, of the lessor company. However, the Debtor's reliance on *Critical Care* is misplaced, as that case is clearly distinguishable from the instant case. In *Critical Care* the court found that the lessor company had control over the nurses because it assigned the nurses' duty stations, determined their schedules, screened the applicants and paid the nurses, regardless of whether payment was received from the hospital.

In the instant case, it is clear that the Debtor clearly is the person for whom the guards perform services, and because PTI does not issue checks to the guards unless it first receives payment from the Debtor, the Debtor has actual control over the payment. In addition, the Debtor, not PTI, screened applicants for licenses, hired and discharged the guards, directed work assignments and determined the work schedules.

The instant case is more like *Burnetta, O.D., P.A., et al. v. Commissioner,* 68 T.C. 387, 1977 WL 3700 (1977), where the issue was whether pension plans of two professional corporations met the coverage requirements of § 401(a)(3) of the Internal Revenue Code. The Tax Court held that the medical office personnel were employees of the professional corporations, notwithstanding the fact that their paychecks were issued by and the workers' records were maintained by a separate payroll service corporation. Just as the Debtor did in the instant case, the professional corporations in *Burnetta* screened and hired the workers, determined their rates of pay, and retained the right to control them. Based on the foregoing, this Court is satisfied that the Debtor retained control over the guards themselves and over the funds used to pay those guards to establish the Debtor as the employer of the guards.

■ This leaves for consideration the issue of whether the Debtor relieved itself of the obligation to pay employment taxes by delegating that function to PTI. The law is clear that the person assessed cannot establish that he is not the person responsible merely by showing that he delegated the taxing responsibility to someone else, for the holding of employees' taxes is considered an important fiduciary duty that cannot be delegated. The existence of other responsible parties who also control disbursement and have the requisite status, duty, and authority does not relieve the party assessed of his own responsibility. *In the Matter of Lucas v. United States,* 1984 WL 21195 (Bankr. D.Conn.1984) (not generally reported). Furthermore, reasonable cause for failure to timely perform federal employment tax obligations cannot be proven merely by showing that the responsibility for performing this obligation has been assigned to an employee or agent of the taxpayer, because each taxpayer has a non-delegable duty to timely perform its federal employment tax obligations. *Obstetrical & Gynecological Group, P.A. v. United States,* 79–2 USTC para. 9511, at 87,839, 44 A.F.T.R.2d 79–5438, 1979 WL 1419 (D.D.C.1979). Based on the foregoing, this Court is satisfied that the Debtor was not relieved of the duty to pay the employment taxes, even though the Debtor contracted with PTI for PTI to do so.

■ The Internal Revenue Code requires employers to deduct withholding taxes and pay FICA and FUTA taxes on employees' wages. Section 6672 of the Internal Revenue Code imposes a penalty upon persons who were responsible for paying employment taxes, but failed to pay the taxes. Section 6672 provides in pertinent part as follows:

> § 6672 **Failure to collect and pay over tax, or attempt to evade or defeat tax.**
>
> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax ... shall ... be liable to a penalty equal to the total amount of the tax not ... accounted for and paid over.

However, the § 6672 penalty only applies to the obligation to withhold employees' income

 

taxes and the employees' share of FICA. 26 U.S.C. §§ 3402, 3102, and 3301. A party charged by § 6672 with the duty to collect, account for, and pay over is known as a "responsible person." Section 6671 defines "person" to include "an officer or employee of a corporation ... who as such officer or employee ... is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671. The duty is generally placed upon high corporate officials charged with general control over corporate business affairs who participate in decisions concerning the payment of debts and disbursal of funds. *Monday v. United States,* 421 F.2d 1210 (7th Cir.1970). Usually, these are the persons who have the ultimate authority over expenditures of the corporation.

■ This Court is satisfied that although there may be one or more persons within the Debtor corporation who have general control over the business affairs and who have ultimate authority over the funds used to pay the FICA and FUTA obligations, the IRS has not pointed to a particular individual, as required by § 6672 and defined by § 6671. Under the statute, an entity, i.e. a corporation, does not qualify as a person. Furthermore, the administrative claim filed by the IRS is unclear as to whether the FICA amounts claimed to be unpaid are attributable to the Debtor's portion, the employees' share, or both. Accordingly, this Court is satisfied that the administrative claim based on 26 U.S.C. § 6672 must be disallowed. Notwithstanding, the Debtor corporation, as primary employer, remains liable for the FICA and FUTA amounts to the extent they remain unpaid.

However, because a portion of the claim remains estimated and unliquidated, this Court cannot allow the balance of the claim, pursuant to § 502(c) of the Bankruptcy Code. Accordingly, the administrative claim is disallowed without prejudice. The IRS is given 15 days from the date of entry of this Order to file an amended claim in a liquidated amount, if any, incurred post-petition are still due and owing.

Based on the foregoing, this Court finds that issues of material fact exist. Therefore, both Motions for Summary Judgment are denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor is denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the IRS is denied. It is further

ORDERED, ADJUDGED AND DECREED that the IRS claim for administrative expense is disallowed. The IRS is given 15 days from the date of entry of this Order to file an amended administrative claim in a liquidated amount.

DONE AND ORDERED.