**UNITED STATES of America, Appellant,**

v.

**Imre GARAMI d/b/a Tidy Maid, Appellee.**

Nos. 94–1261–CIV–ORL–19,
94–1262–CIV–ORL–19.

United States District Court, M.D. Florida,
Orlando Florida.

June 28, 1995.

Robert Hunter Pflueger, Robert H. Pflueger, P.A., Altamonte Springs, FL, for Imre Garami.

Susan R. Waldron, U.S. Attorney's Office, M.D. Fla., Tampa, FL, for U.S.

FAWSETT, District Judge.

This is an appeal from two Bankruptcy Court Orders in Bankruptcy Case No. 94–00473–BKC–6B3. Appellant United States of America contests the Honorable Arthur B. Briskman's October 4, 1994, Order denying its motion for summary judgment, and the September 23, 1994, Order sustaining Debtor's objection to "Claim No. 5," filed by the Internal Revenue Service. Upon motion by Appellant, the appeals were consolidated.

█ Appellant's Brief is found at Docket Number 9[1] (filed December 13, 1994). The Debtor–Appellee has failed to file a brief pursuant to Fed. R. Bankr.P. 8009(a)(2), despite this Court's Order which extended the time for doing so until April 26, 1995. (Doc. No. 12) Although this failure may be prejudicial to the Debtor's position, Appellant is not entitled to automatic reversal of the order from which it appealed. *In re Silk Plants,* 100 B.R. 360, 363 (Bankr.M.D.Tenn. 1989).

## BACKGROUND

Tidy Maid is a residential and commercial cleaning service run by the Debtor, Imre Garami. An office manager assists Mr. Garami with the administrative functions of the business, and Tidy Maid uses from twelve to eighteen cleaners. For economic reasons, the debtor Imre Garami d/b/a Tidy Maid began leasing his employees from Sunshine Staff Leasing, Inc. ("Sunshine") beginning in October of 1993. Under the lease agreement, Sunshine provides weekly payroll

1. All Docket Number references refer to the lead case, 94–1261–CIV–ORL–19.

checks to the commissioned Tidy Maid cleaners in exchange for a fee totaling 3% of the gross payroll. Sunshine is responsible for paying withholding taxes and FICA. This arrangement also enables Tidy Maid cleaners and the Debtor to obtain health insurance through Sunshine.

The Debtor and Tidy Maid's office manager are responsible for the day to day supervision of the cleaners. Tidy Maid hires, fires, trains, assigns and controls the cleaners and provides them with transportation to and from their work assignments, cleaning materials, and vacuum cleaners. Sunshine's role is limited. It pays the cleaners' commissions according to instructions given by Tidy Maid and arranges for an initial drug test.

Prior to the contract with Sunshine, Tidy Maid's taxes were done with the help of a firm of CPAs. The Debtor has no knowledge of whether Sunshine has paid tax liabilities as required under its contract with Tidy Maid.

This controversy arises out of the United States' claim that the Debtor owes unpaid FICA (Form 941) liabilities for the last quarter of 1993 which it alleges were generated with respect to the leased employees. The United States takes the position that Tidy Maid rather than Sunshine was the employer of the leased employees and that Tidy Maid rather than Sunshine is responsible for allegedly unpaid employment tax liabilities.[2] The Debtor takes the position that Sunshine is responsible.

Although Tidy Maid contends that all appropriate moneys have been sent to Sunshine, the government maintains that it has no proof that the taxes have been paid. Sunshine, who is not a party to the action at this time, pays the taxes for the leased employees under its own employer identification number. The government's position appears to be that unless it receives information from Sunshine breaking down Sunshine's lump payment by individual tax identification numbers or proof that taxes have been paid for all of the employees Sunshine leases, the government will hold the Debtor responsible

for all of the taxes. The government contends that the federal tax obligation is that of the person who meets the qualifications of an employer, and that the Debtor, not Sunshine, is such person.

The United States filed a proof of claim dated March 3, 1994, which was not included in the record on appeal. This claim, designated as "Claim 5," asserted a secured claim in the amount of $23,459.08, an unsecured priority claim in the amount of $25,719.06, and an unsecured general claim of $1,984.18, for a total of $51,142.32. (Doc. No. 1, Exh. 6). The Debtor objected to the unsecured priority claim, contending that the tax returns for the period in question had been timely submitted and the amount owed was $2,109.00. (Doc. No. 1, Exh. 9). On September 9, 1994, the United States moved for summary judgment on the Debtor's objection to the claim. (Doc. No. 1, Exh. 14). The court held a hearing on September 13, 1994, at which it orally sustained the Debtor's objection and denied the motion for summary judgment without prejudice. (Doc. No. 1, Exh. 23). A written order sustaining the Debtor's objection and allowing the IRS claim in the amount of $23,459.08 as secured, $2,188.00 as unsecured priority, and $1,476.64 as general unsecured was entered on September 23, 1994. (Doc. No. 1, Exh. 15, signed September 23, 1994). A written order denying the motion for summary judgment without findings of fact or conclusions of law was entered on October 4, 1994. (Doc. No. 1, Exh. 16).

The Appellant United States of America appeals both of these decisions and frames the issues for this Court's review as follows:

1. Whether the bankruptcy court erred in determining that the proof of payment of withholding taxes is the responsibility of the third party leasing company rather than the debtor in this case.

2. Whether the bankruptcy court erred in sustaining the debtor's objection to the claim of the United States with regard to the employment taxes (Form 941)

---

**2.** The Government nonetheless stated that if the debtor could satisfactorily establish that the tax liabilities at issue were paid by Sunshine, it

would credit debtor on a dollar for dollar basis with all payments made by Sunshine.

for the period October 1, 1993 through December 31, 1993.

3. Whether the bankruptcy court exceeded its authority when it concluded that the burden of compliance with the statutory scheme should be borne by the United States rather than by the debtor.

The central question for this Court's determination is whether the Debtor, the third party leasing corporation, or the government has the burden of proving that the required taxes on these employees have or have not been paid under federal law.

## CONCLUSIONS OF LAW

The bankruptcy court's conclusions of law are reviewed de novo on appeal. *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153, 1155 (11th Cir.1995).

 The internal revenue code requires employers to deduct withholding taxes and pay FICA and FUTA taxes on employees' wages. 26 U.S.C. § 3402, § 3102, § 3301; *In re Professional Security Services*, 162 B.R. 901, 903 (Bankr.M.D.Fla.1993). An "employer" is defined as "the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person except that—(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services the term "employer" . . . means the person having control of the payment of such wages . . ." Title 26 U.S.C. § 3401(d) (Supp.1995). The determination of the employer-employee relationship involves an analysis of twenty common law factors which are as follows:

1. whether the worker must comply with other persons' instructions about when, where and how to work;

2. whether the worker is trained by the person for whom services are performed;

3. whether the worker's services are integrated into the business operations;

4. whether the services must be rendered personally by the worker;

5. whether the person for whom the services are performed hires, supervises, and pays assistants;

6. whether there is a continuing relationship between the worker and the person for whom the services are performed;

7. whether the person for whom the services are performed establishes set hours of work;

8. whether the worker must devote substantially full time to the business of the person or persons for whom the services are performed;

9. whether the work is performed on the premises of the person for whom the services are performed;

10. whether the person for whom services are performed retains the right to set the order or sequence of tasks;

11. whether the worker is required to submit oral or written reports;

12. whether payment is made by hour, week, or month rather than lump sum;

13. whether the workers' business and/or traveling expenses are paid;

14. whether the worker must supply tools, materials and other equipment;

15. whether the worker makes a significant investment in facilities used to perform services;

16. whether a worker can realize a profit or suffer a loss as a result of services;

17. whether a worker performs services for more than one firm at a time;

18. whether a worker makes services available to the general public;

19. whether the person for whom services are performed has the right to discharge a worker; and

20. whether a worker has the right to terminate the working relationship without incurring liability.

Rev. Rul. 87–41, 1987–1 C.B. 296. These criteria are ordinarily used to distinguish between an employee and an independent contractor but are equally applicable to determine by whom an individual is employed. *Professional & Executive Leasing, Inc. v. Commissioner of Internal Revenue*, 89 T.C. 225, 232 (1987) (citing *Bartels v. Birmingham*, 332 U.S. 126, 132, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947)). No one factor is controlling, but a critical question is whether

the person for whom the work is performed has the right to control the activities of the individuals whose status is in issue, not only as to results but also as to the means and method to be used for accomplishing the result. *Id.* at 232–33 (citations omitted). A contract which purports to create an employer-employee relationship is not controlling where an analysis of the common law factors as applied to the facts of the particular situation establish that such a relationship does not exist. *Id.* at 233; *Bartels,* 332 U.S. 126, 67 S.Ct. 1547.

■■■ Whether or not two parties stand in an employer-employee relationship is a factual question. *Burnetta v. Commissioner of Internal Revenue,* 68 T.C. 387, 397 (1977) (citations omitted). In factually similar situations involving leasing corporations, courts have declined to find that workers were employees of the corporation from which they were leased. *In re Professional Security Services, Inc.,* 162 B.R. 901 (Bankr.M.D.Fla. 1993); *Burnetta v. Commissioner of Internal Revenue,* 68 T.C. 387 (1977); *Professional & Executive Leasing, Inc. v. Commissioner of Internal Revenue,* 89 T.C. 225 (1987); *cf. In re Critical Care Support Services,* 138 B.R. 378 (Bankr.E.D.N.Y.1992) (lessor company responsible for taxes because it exercised significant control over workers). This Court finds that Tidy Maid's employees are no exception and that the Bankruptcy Court erred in its rulings to the contrary. The administrative acts performed by Sunshine of arranging for the initial drug testing, providing the cleaners with information about health insurance, and providing W–4 Forms do not supersede the economic reality of the employer-employee relationship which the cleaners have with Tidy Maid. Sunshine generates payroll checks based on the information supplied to it by Tidy Maid. There is no evidence to suggest that Sunshine would pay the cleaners and file the employment taxes regardless of whether Tidy Maid submits payment. *See In re Critical Care,* 138 B.R. 378.

■■■ Although Sunshine contractually agreed to pay the employment taxes of Tidy Maid's cleaners, such an agreement does not relieve the actual employer, Tidy Maid, of the obligation to pay those taxes. *In re Professional Security Services, Inc.,* 162 B.R. 901, 903 (Bankr.M.D.Fla.1993). Because each taxpayer has a non-delegable duty to timely perform its federal income tax obligations, a contract with a third party does not relieve it of its duty to do so. *Id.* Therefore, in the instant case although the Debtor may have paid the appropriate taxes to Sunshine for forwarding to the United States, until payment is actually made to the government, the responsibility for such payment rests on the shoulders of the Debtor. The Court is aware of no authority to the contrary.

It appears that the Bankruptcy Court's ruling was influenced by the seeming unfairness of the burden this result places on a debtor who is making a good faith attempt to comply with the law.[3] In the instant case, the debtor may be able to secure proof of payment from Sunshine which would satisfy the government's demands. As problems such as those presented in the instant case become more widespread, it is up to Congress, not the courts, to fairly and affirmatively accommodate the peculiarities of staff leasing into this country's internal revenue system.

### CONCLUSION

Based on the foregoing, the rulings of the bankruptcy court are **REVERSED and RE-MANDED** for proceedings consistent with this Order.

---

**3.** At the September 13, 1994 hearing the Bankruptcy Court stated:

It seems to me the burden is switched unfairly in this particular case. It seems to me you don't have an answer on how to proceed because it's a bigger problem than just this case. It seems like you're putting this on the shoulders of this debtor [sic] thirty thousand employees and you're not sure if they're paying taxes on them. (Doc. No. 1, Exh. 23).