In re EARTHMOVERS, INC., Debtor.

EARTHMOVERS, INC., Plaintiff,

v.

UNITED STATES of America and Sunshine Staff Leasing, Inc., Defendants.

Bankruptcy No. 94–3548–BKC–3F1. Adv. No. 95–354.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 7, 1996.

Richard A. Perry, Ocala, FL, for Earthmovers, Inc.

Ross B. Ward, Jr., Clearwater, FL, for Sunshine Staff Leasing, Inc.

Bruce T. Russell, Washington, DC, for U.S.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court upon a Complaint for a declaratory judgment to determine Earthmovers' liability for FICA and FUTA employee withholding taxes owed to the United States of America, Internal Revenue Service (hereinafter "IRS") for Earthmovers' employees leased from Defendant, Sunshine Staff Leasing, Inc. (hereinafter "Sunshine"). Earthmovers' Complaint also contains a count for damages against Sunshine, in the event that the Court finds that Earthmovers is liable for the taxes. A trial was held on June 5, 1996. Based upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Earthmovers is a construction company engaged primarily in the business of construction site preparation. Earthmovers filed its voluntary petition under Chapter 11 on August 19, 1994. Sunshine is an employee leasing company which operates and is licensed pursuant to Chapter 468, Florida Statutes. Subsequent to its bankruptcy filing, Earthmovers and Sunshine entered into a Subscriber Service Agreement on August 29, 1994, whereby Earthmovers' employees became employees of Sunshine, who were then leased back to Earthmovers. Donald Lee, the president of Earthmovers, testified that the person who previously handled personnel and payroll matters for the company, left around the time of the bankruptcy filing. Mr. Lee felt that having an employee leasing company handle the personnel and payroll issues would be easier and more efficient. Therefore, Earthmovers and Sunshine entered into a contractual agreement. (Plaintiff's Ex. 1) Under the contract, Earthmovers leased all of its employees from Sunshine. The employees work under the direction and supervision of Earthmovers, but are paid by Sunshine. Sunshine is responsible for the payment of wages to the employees, the collection of the appropriate payroll taxes from the paychecks, the payment of all employee withholding taxes due, and the filing of all necessary federal payroll tax forms. In addition, Sunshine is responsible for the administration and payment of workers' compensation premiums. In exchange, Earthmovers pays Sunshine a service fee equal to 3.5% of gross payroll. (Plaintiff's Ex. 1)

Employee leasing companies are regulated by the state of Florida pursuant to Chapter 468, Florida Statutes. Fla.Stat. § 468.525 sets out the requirements for leasing companies to be licensed to operate in the state of Florida. Fla.Stat. § 468.525(4)(b) provides that the leasing company must assume responsibility for the payment of wages to the employees without regard to payments by the client to the leasing company. Fla.Stat. § 468.525(4)(c) requires the leasing company to assume responsibility for the payment of payroll taxes. However, this subsection does not contain the language of (4)(b) which states "without regard to payments by the client to the leasing company."

Under the statute and contract, Sunshine is also responsible for maintaining a safety standards program and safety training program. In addition, Sunshine reserves the right of direction and control over the employees and retains the authority to hire, terminate and reassign employees.

The president of Sunshine, Robert Gaines, testified that Sunshine has approximately 14,000 employees which its leases to various

companies. He also testified that when Sunshine pays the employee withholding payroll taxes to the IRS, the taxes are paid under Sunshine's employee identification number. Mr. Gaines testified that all taxes owed for employees working for Earthmovers have been paid by Sunshine. Earthmovers introduced into evidence copies of billing reports and canceled checks payable from Earthmovers to Sunshine for the employees' payroll. In the memo section of many of the canceled checks is written "payroll." The checks and billing reports date from August 29, 1994 to May of 1996. In addition, Sunshine entered into evidence copies of all 941 Forms and 940 Forms filed by Sunshine for the relevant time periods, copies of quarterly payroll tax details reports for the Form 941 for Earthmovers' employees for the relevant time periods, and all of the W–2 forms issued by Sunshine for 1994 and 1995 for Earthmovers' employees. (Sunshine Composite Ex.)

On August 30, 1995, the IRS filed a Request for Payment for unpaid payroll taxes in Earthmovers' Chapter 11 case. The request indicated that the IRS deemed all payroll taxes due between August 29, 1994 and the date of the request to be unpaid since the taxes had not been paid under Earthmovers' employer identification number.

Earthmovers filed this adversary proceeding seeking a declaratory judgment finding that Sunshine was the employer responsible for the payment of taxes, therefore relieving it of any responsibility for the payment of payroll taxes. In the alternative, Earthmovers demanded judgment against Sunshine for the amount allegedly owed to the IRS, so that Earthmovers could pay the taxes itself.

### CONCLUSIONS OF LAW

At the trial, the Court made an oral ruling on the record which it will now memorialize in writing, regarding the Request for Payment filed by the IRS for taxes allegedly owed for the period, August 29, 1994 to August 30, 1995. The Court finds that Earthmovers and Sunshine proved by a preponderance of the evidence that the payroll taxes owed for employees of Earthmovers have been paid by Sunshine for the period August 29, 1994 to August 30, 1995.

Earthmovers and Sunshine, through testimony and documentary evidence, did prove that Earthmovers forwarded the amount for the taxes to Sunshine, who in turn, filed the 940 and 941 Forms for the employees and remitted payment for the FICA and FUTA taxes.

For purposes of claims and objections thereto in bankruptcy, it makes no difference who is primarily or secondarily liable. The only question is, was the claim paid? Here the answer is yes. Evidence presented at the trial proved that money was sent in under each employee's social security number. With the cooperation of Sunshine, the monies for the payroll taxes for Earthmovers' employees could easily be traced. Therefore, the Court finds that Earthmovers has no liability to the IRS for federal employment withholding taxes, including FICA and FUTA, for the period commencing August 29, 1994 to August 30, 1995.

The next and primary issue in this case is whether Sunshine or Earthmovers is the statutory "employer" of the individuals leased from Sunshine, who work for Earthmovers, for purposes of withholding taxes owed to the IRS. At the trial, and in their post-trial briefs submitted to the Court, Sunshine has sided with Earthmovers, taking the position that it, Sunshine, is the statutory employer of Earthmovers' workers. The IRS, on the other hand, takes the position that Earthmovers is the "employer" of its workers, rather than Sunshine, and that Earthmovers is the entity liable for federal payroll taxes. This is purely a matter of Internal Revenue Code law, and case law interpreting it. It is not a matter of bankruptcy law. Apparently, and unfortunately, there is no statutory revenue law specifically applicable to staff leasing companies, even though these companies have multiplied in number in recent years.

The starting point for this analysis is 26 U.S.C. § 3401(d)(1) which defines "employer" for purposes of the Internal Revenue Code. It states,

> For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" ... means the person having control of the payment of such wages.

One treatise has explained this section further by stating,

Employer—(a) The term "employer" means any person for whom an individual performs or performed any service, of whatever nature, as the employee of such person.

\* \* \* \* \* \*

(f) If the person for whom the services are or were performed does not have legal control of the payment of such wages for such services, the term "employer" means ... the person having such control.

12 CCH Standard Federal Reporter § 35,-037 (1996)

It goes on to explain that

The person having control over payment must have sole and legal control over the payment of funds to supplant the common law test.... In general, the person providing a service (e.g., corporation providing the services of nurses), rather than the customer or client, is the employer of workers who provide the service, providing that person has the right to control and direct the worker's performance and has the right to discharge unsatisfactory workers.... [T]he organization having control and direction over the employee, rather than over the payment of the compensation, is considered to be the employer for FICA and FUTA tax purposes.

12 CCH Standard Federal Tax Reporter § 35,038.20(.17) (1996)

Case law over the years has developed a litany of factors to determine the employer-employee relationship which have primarily been used in the independent contractor context. However, other courts have applied these same factors to the context of staff leasing companies. These so-called "common law" factors have been incorporated in Revenue Ruling 87–41, 1987–1 C.B. 296. These factors consist of: (1) instructions as to when, where and how the worker is to work; (2) training; (3) integration for the worker's services into the business operation; (4) whether the services must be rendered personally by the leased employees; (5) hiring, supervising and paying assistants; (6) whether there is a continuing relationship between the worker and the person for whom the services are performed; (7) set hours of work; (8) whether the worker must devote substantially full-time to the services of the person for whom the services are performed; (9) doing work on the employer's premises; (10) order or sequence set for performance of services; (11) oral or written reports; (12) payment by the hour, week, or month; (13) payment of business and/or travel expenses; (14) furnishing significant tools, materials and other equipment; (15) significant investment and facilities used by the worker in performing services; (16) prospect for realization of a profit or a loss; (17) working for more than one firm at a time; (18) making services available to the general public; (19) right to discharge; and (20) the leased employees' right to terminate his or her relationship with the person for whom services are performed without incurring liability.

There is no need for the Court to go through an analysis of all of these factors, because Earthmovers admits that it is the common law employer of its employees. It is clear to the Court from the evidence presented at trial, that using these factors, there is no doubt that Earthmovers is the "common law" employer, since it has primary, and allegedly, exclusive control of its workers. The question then becomes, does the agreement with Sunshine, supersede the common law employer-employee relationship of Earthmovers and its workers? Can Earthmovers contract away its responsibility for payroll taxes to Sunshine, and therefore, escape liability? Earthmovers argues that for purposes of § 3401(d), Sunshine has "control over the payment of wages" and therefore, Sunshine is the "employer" of the workers.

There have been two other courts within the Middle District of Florida which have dealt with a factually similar situation within the context of bankruptcy. In *In re Professional Security Services, Inc.,* 162 B.R. 901 (Bankr.M.D.Fla.1993), Judge Paskay deter-

mined that the debtor was the "employer" of its security guards for purposes of IRS payroll taxes, even though the debtor leased its security guards from a staff leasing company. The facts of the case are very similar to the case at bar. The debtor's business consisted of providing security guards to various businesses. One month after filing its petition under Chapter 11, the debtor entered into an agreement with Payroll Transfers, Inc. (PTI) to "lease" its security guards from PTI for a fee of 4% of gross payroll. The guards who were previously employed by the debtor, were now "employed" by PTI. PTI was responsible for prepaying the payroll for the guards, filing the unemployment tax returns and paying all employment taxes. After going through the analysis under § 3401, the court concluded that for purposes of withholding taxes, the debtor, and not PTI was the "employer" of the security guards, based upon the facts that the debtor was clearly the entity for whom the guards performed services, and because PTI did not issue checks to the guards unless it first received payment from the debtor, thereby allowing the debtor to have "actual control" over the payment of wages.

The case of *United States v. Garami,* 184 B.R. 834 (M.D.Fla.1995) involved one of the defendants in this case, Sunshine Staff Leasing, although it was not directly a party to the case. The debtor was a residential and commercial cleaning service who leased its employees from Sunshine Staff Leasing, in what seems to be an identical agreement to the one in the case at bar. In exchange for 3% of gross payroll, Sunshine was responsible for preparing the payroll, paying withholding taxes and FICA. The debtor was responsible for day to day supervision of the employees, as well as, hiring, firing, training and assigning the cleaners. The Bankruptcy Court (Briskman, J.) had held that the cleaners were employees of the leasing company, Sunshine. On appeal, the District Court reversed and held that the cleaners were employees of the debtor cleaning service. The court explained its reasoning by saying,

The administrative acts performed by Sunshine of arranging for the initial drug testing, providing the cleaners with information about health insurance, and providing W–4 forms do not supersede the economic reality of the employer-employee relationship which the cleaners have with Tidy Maid. Sunshine generates payroll checks based on the information supplied to it by Tidy Maid. There is no evidence to suggest that Sunshine would pay the cleaners and file the employment taxes regardless of whether Tidy Maid submits payment. [citation omitted] Although Sunshine contractually agreed to pay the employment taxes of Tidy Maid's cleaners, such an agreement does not relieve the actual employer, Tidy Maid, of the obligation to pay those taxes. *In re Professional Security Services, Inc.,* 162 B.R. 901, 903 (Bankr. M.D.Fla.1993). Because each taxpayer has a non-delegable duty to timely perform its federal income tax obligations, a contract with a third party does not relieve it of its duty to do so. *Garami,* 184 B.R. at 838.

The court in *Garami* held that the debtor could not merely contract away its liability to the IRS for its payroll taxes.

The instant case differs slightly from the *Garami* case when the court stated that there was no evidence that Sunshine would pay the employees and file the employment taxes regardless of whether it received payment from the subscriber. In the instant case, there was testimony from the president of Sunshine that its payment of wages and payroll taxes did not hinge on receiving payment from Earthmovers[1]. Sunshine is obligated by statute to pay the employees their wages "without regard to payments by the client to the leasing company." Fla.Stat. § 468.525(4)(b). The statute also requires Sunshine to assume responsibility for payment of payroll taxes, but the language "without regard to payments by the client to the leasing company" is omitted. Fla.Stat. § 468.525(4)(c). Upon examination of the

---

1. The Court notes, however, that testimony at trial indicated that Sunshine relied on information from Earthmovers, regarding the number of hours worked each week by each employee, so that Sunshine could compute the amount of wages due. Without this information from Earthmovers, Sunshine would not know how much to pay each employee.

contract entered into between Sunshine and Earthmovers, the court notes that it does state that wages and taxes will be paid by Sunshine, but it is silent as to what happens in the event Earthmovers does not forward the amount owed for its payroll and taxes to Sunshine. The contract does contain a provision requiring Earthmovers to submit a prepayment in the amount of "one average payroll" which is kept in trust. The Court assumes that this amount would be applied to the payroll of a subscriber in the event the subscriber did not forward the amount due for the payroll. The IRS argues that in the event Earthmovers did not submit the amount owed for payroll to Sunshine, Sunshine would immediately terminate the contract, and would no longer be liable for wages or taxes. The Court suspects the IRS is correct. The contract provides for termination upon 30 days written notice by either party.

It is clear from the evidence presented that Earthmovers is the common law employer of its workers, and Earthmovers admits as much. This Court agrees with the court in *Garami* that an employer cannot contract away its ultimate obligation and responsibility for wages and taxes to another, and thereby escape all liability. Earthmovers, as the employer, and therefore, the taxpayer, ultimately bears the final liability for its employees' wages and payroll taxes. It is rather disingenuous for Earthmovers to contend that it does not have "control over the payment of wages" to its employees, when Earthmovers submits the information regarding the hours worked each week by each employee, Earthmovers forwards the amount owed for payroll to Sunshine for distribution, and Earthmovers retains the power to hire and fire employees. There is no question that for purposes of § 3401(d), Earthmovers is the "employer" who directs the employees and who has control over the payment of wages.

However, in the instant case, Earthmovers has decided to contract away its administrative function of preparing payroll and tax returns. The Florida Legislature has given its statutory approval for these staff leasing companies, via Chapter 468, Florida Statutes.

A contract was entered into for Sunshine to pay the wages and taxes owed by Earthmovers. An agreement to pay the debt of another must be in writing under the Statute of Frauds. This agreement was in writing.

This contract, however, does not relieve Earthmovers of liability for wages and taxes it owes as the common law employer. Earthmovers cannot simply present the lease agreement as a total defense to any liability it might have to its employees for wages owed, or to the government for taxes owed. The burden is on Earthmovers to prove, not only that it paid Sunshine, but also that Sunshine paid the IRS. In Florida, where there is a contractual obligation to pay taxes and a statutory requirement to pay payroll and taxes during the contract period, the IRS can look to both Earthmovers and Sunshine. Of course, the IRS can only collect the taxes from one. The common law employer, Earthmovers, must show that taxes were paid to the IRS. Sunshine must show that either the taxes were paid, or the contract was terminated and not in effect during the period claimed.

In sum, this Court finds that Earthmovers is the common law employer of its workers who bears the ultimate liability for wages and payroll taxes owed to and on behalf of its employees. The fact that these workers are "leased" from Sunshine is not a defense. Sunshine, on the flip side, is by statute and contract also responsible for paying wages and payroll taxes owed during the period the contract is in effect. Sunshine and Earthmovers are de facto "co-employers" of these workers.

Florida statutory law allows these staff leasing companies to exist. Under the Florida statute, Sunshine must be responsible for paying the wages and filing the payroll tax returns and paying the taxes. The Court finds that as long as Sunshine is in compliance with the requirements of Florida law, it is free to fulfill its contract with Earthmovers and undertake these responsibilities. However, in the event that Sunshine defaults on its obligations, the government could still look to Earthmovers for payment of taxes owed on behalf of its employees. Earthmovers bears the ultimate responsibility in

making sure that wages and taxes are paid on a timely basis. If Earthmovers wishes to contract out this function, that is acceptable. However, in the event of a default by Sunshine on the contract, Earthmovers must still bear responsibility.

A separate final judgment will entered in accordance with the foregoing.

## FINAL JUDGMENT

This proceeding is before the Court upon a Complaint for a declaratory judgment to determine Earthmovers' liability for FICA and FUTA employee withholding taxes owed to the United States of America, Internal Revenue Service (hereinafter "IRS") for Earthmovers' employees leased from Defendant, Sunshine Staff Leasing, Inc. (hereinafter "Sunshine"). Consistent with Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED, ADJUDGED AND DE-CREED:**

The Court enters a declaratory final judgment finding that Earthmovers is the common law employer of its employees, who bears ultimate responsibility for the payment of wages and employee withholding taxes to its employees and the government. Sunshine, by statute and contract, is also responsible for the payment of wages, the filing of tax returns, and the payment of employee withholding taxes to the IRS. Sunshine may file the Form 940 and Form 941 tax returns and may submit payment for taxes owed on behalf of employees who work for Earthmovers. However, in the event of a default of this obligation by Sunshine, Earthmovers still bears responsibility for wages and taxes owed to and on behalf of its employees.

**DONE AND ORDERED.**