IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Vance Douglas ROE
and Shannon Louise Roe,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 000905F)

Vance Roe and Shannon Roe, Plaintiffs, argued the cause *pro se*.

Devid Zeh, Auditor, Department of Revenue, argued the cause for Defendant.

Decision for Plaintiff rendered June 12, 2001.

### SALLY L. KIMSEY, Magistrate.

Plaintiffs appeal Defendant's tax assessment for tax year 1999. A telephone trial was held November 6, 2000. Because of a legal issue raised at trial, the court granted the parties time after the trial to submit additional materials. Vance Roe and Shannon Roe appeared for themselves. David Zeh, Auditor, appeared for Defendant.

Plaintiffs assert that their income,[1] although earned in Oregon, is exempt from state income tax under Public Law

---

[1] As residents of Washington, a community property state, the income legally is both Plaintiffs' income. RCW 26.16.030 ("[p]roperty not acquired or owned, as

101-322, the Amtrak Reauthorization and Improvement Act of 1990 (Amtrak Act).

## STATEMENT OF FACTS

Plaintiffs are residents of Vancouver, Washington. During the year in question, Vance Roe (Roe) drove a truck for Rose City Moving and Storage (Rose City). He started working for Rose City as a full-time, permanent employee in June 1993.[2] He regularly worked overtime for which he was compensated. He worked only for Rose City until he left in May 2000. Rose City hired him directly. His work clothes identified him as a Rose City employee. He reported daily to Rose City for work. Rose City managed his daily work activities. He was also "subject to the direction of Rose City Moving and Storage management, its policies and procedures." Roe considered himself a Rose City employee.

With the exception of vacation and bonus checks,[3] Roe's paychecks came from Barrett Business Services (Barrett). Barrett is at least partially owned by the owner of Rose City. The W-2 Roe received at the end of the year showed Barrett as his employer. Barrett is a human resources management company. They provide services as diverse as payroll for employers to temporary staffing to full-time leased employees. In the present case, Rose City "leases its entire full-time staff from Barrett." Further, "[t]he leasing arrangement is not that of a temporary worker."[4] By way of contrast, a Barrett representative was sited at Rose City to manage, hire, and supervise temporary employees. Temporary employees for Rose City were hired and placed at Rose City by Barrett.

---

prescribed in RCW 26.16.010 and 26.16.020, acquired after marriage by either husband or wife or both, is community property").

[2] A letter submitted by an employee of Barrett Business Services (Barrett) indicates that Roe's date of hire was September 1993. It is possible that Roe was first an employee of Rose City and later became a leased employee through Barrett. The court does not regard that apparent inconsistency as significant.

[3] Roe's vacation and bonus checks came directly from Rose City.

[4] Oregon's workers' compensation statutes distinguish between full-time leased employees and temporary workers. *See* ORS 656.850 to 656.855 (1997) (regulating worker leasing companies).

ISSUES

There are two issues in this case. The first issue is whether an employee who regularly received overtime pay may be under the jurisdiction of the Secretary of Transportation through its administration of the Motor Carrier Act. The second issue is whether a leased employee may be an employee of a motor carrier for purposes of the Amtrak Act when the employee leasing company is not an interstate motor carrier. As a subissue, is a leased employee "paid by" the employee leasing company or by the company for whom the employee performs the work?

ANALYSIS

■        The Amtrak Act exempts from state taxation, by any state other than a taxpayer's state of residence, the wages of employees who perform regularly assigned duties in two or more states, when their duties directly affect commercial motor vehicle safety in the course of their employment. *See* Amtrak Reauthorization and Improvement Act of 1990, Pub L No 101-322 (1990). The pertinent portion of the Amtrak Act, found in Title 49 of the United States Code, reads:

> "(1)   No part of the **compensation paid by a motor carrier** providing transportation * * * to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence.
>
> "(2)   In this subsection, the term 'employee' has the meaning given such term in section 31132."

49 USC § 14503(a) (1994) (emphasis added).[5]

The word "employee" is defined as follows:

> "(2)   **'employee' means an operator of a commercial motor vehicle** (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who

---

[5] That statute was originally codified at 49 USC section 11504(b)(1) (Supp 1990).

"(A)   directly affects commercial motor vehicle safety in the course of employment; and

"(B)   is not an employee of the United States Government, a State, or a political subdivision of a State acting in the course of the employment by the Government, a State, or a political subdivision of a State."

49 USC § 31132 (1994) (emphasis added).[6]

*May an employee who receives overtime be under the jurisdiction of the Secretary of Transportation?*

■        Generally, the Fair Labor Standards Acts (FLSA) governs employees. The FLSA defines employee as "any individual employed by an employer." 29 USC § 203(e)(1) (1994). The FLSA requires that employers pay overtime for hours worked in excess of 40 hours per week. 29 USC § 207(a)(1) (1994). Overtime is paid at one and one half times the regular hourly rate. *Id.* The requirement to pay overtime does not apply to certain classes of employees. 29 USC § 213(b) (1994). One of those classes of employees is "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." 29 USC § 213(b)(1).

        Section 204 of the Motor Carrier Act is now codified at 49 USC section 31502 (1994). That statute provides that "[t]he Secretary of Transportation may prescribe requirements for—(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 USC § 31502(b)(1).

■        Persons exempt from the motor carrier application of the FLSA must meet a two-part test. First, the employee must be the employee of a motor carrier. *Id.* Additionally, the employee's activities must "directly affect[ ] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce[.]" 29 CFR § 782.2(a) (2000). As to the second requirement, the parties agree that Roe "directly affects the

---

[6] That statute was originally codified at 49 USC section 2503.

safety of operation of motor vehicles." The parties disagree, however, on whether Roe was an employee of a motor carrier.

■ In *Moore v. Universal Coordinators, Inc.,* 423 F2d 96 (3rd Cir 1970), the Court of Appeals for the Third Circuit addressed the very issue of whether a leased employee was an employee of a motor carrier for purposes of being regulated by the Secretary of Transportation[7] such that he was exempt for the maximum hours requirement of the FLSA. Moore was a leased employee of Universal Coordinators, Inc. (Universal). Universal's primary business was to supply labor to other corporations. In Moore's case, he was leased to International Paper (International), a private motor carrier, as a truck driver. He drove only for International. *Id.* at 96-97. The court stated that "the word 'employees'—undefined in the Act—must be construed in light of the Motor Carrier Act's dominant purpose * * * to promote safety of operation." *Id.* at 99 (citing *U.S. v. Amer. Trucking Ass'ns,* 310 US 534, 60 S Ct 1059, 84 L Ed 1345 (1940)). The *Moore* court held that for purposes of regulation under the Motor Carrier Act, Moore was an employee of a motor carrier. *Moore,* 423 F2d at 99. The court further held that:

> "The Secretary's power to promote safety of operation would be rendered nugatory[8] if he were powerless to prevent a carrier from using unqualified and overtired drivers simply because the drivers are technically the employees of a manpower-supply agency."

*Id.* at 100.

■ The fact that Roe actually received overtime does not mean that he is under the concurrent jurisdiction of the Secretary of Labor and the Secretary of Transportation. The United States Supreme Court held in *Levinson v. Spector Motor Co.,* 330 US 649, 661, 67 S Ct 931, 91 L Ed 1158 (1947)

---

[7] At the time *Moore* was decided, the Interstate Commerce Commission was the regulating authority under the Motor Carrier Act. That authority has since been transferred to the Secretary of Transportation. For consistency, the court will refer to the Secretary of Transportation.

[8] Nugatory is defined as "having little or no consequence; worthless" or "of no force; invalid." *Webster's Third New Int'l Dictionary* 1548 (unabridged ed 1993). An earlier edition of the dictionary also included the words "trifling," "inoperative," and "ineffectual" in its definition of nugatory. *Webster's Second New Int'l Dictionary* 1672 (unabridged ed 1952).

that "Congress has prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division, United States Department of Labor, with that of the Interstate Commerce Commission as to maximum hours of service."

Nor does the fact that Roe received overtime mean that he is no longer under the jurisdiction of the Secretary of Transportation. Numerous courts have held that state statutes regulating the payment of overtime apply to employees exempt from the overtime provisions of the FLSA. *See Pacific Merchant Shipping Ass'n v. Aubry*, 918 F2d 1409, 1413 n 4 (9th Cir 1990) ("California may apply its overtime provisions to * * * the FLSA-exempt seamen"); *Pettis Moving Co., Inc. v. Roberts*, 784 F2d 439, 441 (2nd Cir 1986) ("Congress did not prevent the states from regulating overtime wages paid to workers exempt from the FLSA."); *Central Delivery Service v. Burch*, 355 F Supp 954, 959 (D Md), *aff'd*, 486 F 2d 1399 (4th Cir 1973) (finding that Congress could have provided that the overtime exemption under the Motor Carrier Act is exclusive of any right to overtime under a private agreement or a State Wage and Hour Act but did not).

■    The court does not know why Roe received overtime.[9] However, the reason Roe received overtime is not relevant to the court's inquiry. To paraphrase the Third Circuit in *Moore*, the Secretary of Transportation's ability to promote safety of operation would be of little or no consequence if he were powerless to prevent a carrier from using unqualified and over-tired drivers simply because the drivers received overtime and were thereby removed from the Secretary's jurisdiction. *Moore*, 423 F2d at 100. The court finds that for purposes of regulation under the Motor Carrier Act, Roe was an employee of a motor carrier who directly affected safety of operation. Therefore, even though he received overtime, he remained under the jurisdiction of the Secretary of Transportation.

---

[9] By Oregon Administrative Rule (OAR), state statutes regulating overtime do not apply to employees who may be regulated by the Secretary of Transportation under the Motor Carrier Act. *See* OAR 839-020-0125(3)(a).

*May a leased employee be an employee for purposes of the Amtrak Act when the employee leasing company is not an interstate motor carrier?*

As noted above, Roe was an employee of a motor carrier who directly affected the safety of operation. That is not the end of the inquiry. The one remaining question is whether a leased employee is "paid by" the employee leasing company or by the company for whom the employee performs the work. *See* 49 USC § 14503(a)(1) ("[n]o part of the **compensation paid by a motor carrier** providing transportation") (emphasis added).

In interpreting 49 USC section 14503(a)(1), a federal statute, the court must look to federal principles of statutory construction. *See Butler v. Dept. of Rev.*, 14 OTR 195, 199 (1997). The "task is to identify and carry out the intent of Congress when it enacted" the statute. *Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400, 908 P2d 308 (1995) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 US 41, 45, 107 S Ct 1549, 95 L Ed 2d 39 (1987)). The court first looks at "the language of the governing statute, guided not by 'a single sentence or member of a sentence, but look[ing] to the provisions of the whole law, and to its object and policy.'" *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 US 86, 94-95, 114 S Ct 517, 126 L Ed 2d 524 (1993) (alteration in original) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 US 41 at 51).

■ In interpreting the phrase "compensation paid by a motor carrier" the court looks to the Internal Revenue Code, specifically IRC section 3401, for guidance. Wages are defined as "all remuneration * * * for services performed by an employee for his employer[.]" IRC § 3401(a). Employer is defined as:

"the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that

"(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' * * * means the person having control of the payment of such wages[.]"

IRC § 3401(d) (2001).

*In re Earthmovers, Inc.*, 199 BR 62 (Bankr MD Fla 1996 ), *vacated as moot*, 242 BR 49 (MD Fla 1999), considered who was responsible for the payment of wages and withholding taxes when the employees were leased from a worker leasing company. After it filed for bankruptcy, Earthmovers leased its full-time staff from Sunshine Leasing (Sunshine). Sunshine was an employee leasing company. The employees "work[ed] under the direction and control of Earthmovers." *Id.* Per Earthmovers' agreement with Sunshine, Sunshine was responsible for the payment of wages to the employees and the related withholding taxes and workers' compensation premiums. Earthmovers paid Sunshine 3.5 percent of gross payroll for the services Sunshine provided. *Id.* As a part of the bankruptcy proceeding, the Internal Revenue Service filed a request for payment of unpaid payroll taxes. *Id.* at 64. In analyzing IRC section 3401, the court looked at the degree of control Earthmovers exercised over the employees. *Id.* at 65. The court also noted that Sunshine relied on information from Earthmovers to know how much to pay the employees.[10] *Id.* at 66 n 1.

The court found that Earthmovers was the common-law employer of the employees. Further, the court held that "Earthmovers bears the ultimate responsibility in making sure that wages and taxes are paid on a timely basis" because "an employer cannot contract away its ultimate obligation and responsibility for wages and taxes[.]" *Id.* at 67-68 (citing *United States v. Garami*, 184 BR 834, 838 (MD Fla 1995)).

Did Rose City have control of the payment of the wages? Rose City directed Roe's work. He reported to Rose City. He was hired by Rose City. He wore a Rose City uniform. And, he was subject to Rose City's policies and procedures. Without information from Rose City, Barrett would not have known how much to pay Roe. The court finds that Rose City controlled the payment of wages to Roe. As in *In re Earthmovers*, Rose City could not contract away its liability for wages and taxes.[11]

---

[10] Florida law obligated Sunshine to pay the wages and withholding regardless of whether they received payment from Earthmovers. *See* Fla Stat § 468.525(4)(b). Oregon contains no similar statute.

[11] In performing its research the court came across OAR 150-316.167(1) (7). The relevant portion of the rule states that "[s]tatements in contractual agree-

■ While Rose City controlled the payment of wages, was Roe's compensation **paid** by a motor carrier? Paid is the past tense of pay. It is defined as "receiving pay[.]" *Webster's Third New Int'l Dictionary* 1620 (unabridged ed 1993). Pay is defined as "[t]o satisfy (someone) for services rendered" or "[t]o give in return for goods or services" or "[t]o make compensation for[.]" *Id.* at 1659. Rose City, as the situs employer, receives the benefit of the leased employees' services. A situs employer has an obligation to pay for the services it receives. It is highly unlikely that Barrett would have continued its relationship with Rose City if Rose City did not submit to Barrett the amount owed for Rose City's leased employees. Rose City merely contracted away the administrative functions of payroll and employer withholdings. *See In re Earthmovers*, 199 BR at 67. The court finds that Roe's compensation was paid by a motor carrier.

The court finds further support in the purpose of the Amtrak Act. The Amtrak Act was passed so that "rail and motor carrier transportation workers will only have to pay State taxes to their State of residence." 136 Cong Rec S8676 (1990) (statement of Sen Slade Gorton). Prior to the Amtrak Act's passage "a truck driver or train engineer might pass through several states during a single day, technically earning income in each of the states. That could subject those employees to burdensome filing requirements and conflicting claims for tax credits." *Butler v. Dept. of Rev.*, 14 OTR 195, 197 (1997). The apparent goal of that part of the law "was to relieve those employees of unreasonable burdens by limiting their tax obligations." *Id.* Finding that Roe was paid by a motor carrier is consistent with both the language and intent of the Amtrak Act.

## CONCLUSION

As a truck driver, Roe was an employee who directly affected the safety of operation in interstate commerce. Consistent with the purpose of the Motor Carrier Act to promote safety of operation, he remained under the jurisdiction of the

---

ments concerning employer tax liabilities are not sufficient to transfer liabilities between worker leasing companies and lessors." Within the context of the rule, however, it is clear that the lessor **is** the worker leasing company. The statement becomes meaningless.

Secretary of Transportation even though he received overtime. Finally, via the administrative conduit of Barrett, Roe's compensation was paid by a motor carrier. Now, therefore;

IT IS THE DECISION OF THIS COURT that Plaintiffs' income, although earned in Oregon, is exempt from state income tax under the Amtrak Act.